HAROLD SEITZ, PETITIONER, v. THE SINGER MANUFAC-
TURING COMPANY, RESPONDENT.

Union County Court

Decided January 20, 1955.

*Messrs. Forman & Forman (Mr. Louis L. Forman* appearing), attorneys for the petitioner.

*Messrs. Minard, Cooper, Gaffey & Webb (Mr. Ralph E. Cooper* appearing), attorneys for the respondent.

McGRATH, J. C. C. Petitioner suffered a compensable accident, of which the respondent had notice August 20, 1952, and through his attorney he filed a petition on March 4, 1954. The respondent answered that the petitioner was compelled to stop work because of the injury, but that respondent did not know when the man would be able to return to work, and further stated that permanent disability was in question at the time. Petitioner was treated by the plant physician and treated or seen by about ten other doctors.

On May 3, 1954 it was ordered by the Deputy Director that the case be postponed for two months, during which time the petitioner was to submit to certain treatment; and the hearing was held on July 19, 1954, which is about two years from the accident, and an award of 450 weeks, with additional continuous benefits under *R. S.* 34:15–12(*b*), was made by the Deputy Commissioner, but he refused to award a reasonable fee to the petitioner's attorney under his construction of the statute which was considered by the Supreme Court in the case of *Haberberger v. Myer*, 4 *N. J.* 116 (1949), but which later was amended. Under the old statute the respondent could wait until immediately prior to any hearing and then diminish or entirely defeat the award of counsel fees by making an offer of settlement immediately prior to the hearing. However, the statute has been amended to read as follows:

"* * * When, however, at a reasonable time, prior to any hearing compensation has been offered and the amount then due has been tendered in good faith or paid, the reasonable allowance for attorney fees shall be based upon only that part of the judgment or award in excess of the amount of compensation, theretofore offered, tendered in good faith or paid."

██ The amended statute differs from the statute considered in *Haberberger v. Myer* in that the offer or tender must be in good faith and the offer, tender or payment must be made at a reasonable time prior to any hearing. This amendment is obviously intended to relieve the attorney from the effects of the old statute as decided in *Haberberger v. Myer*. It is true that the Compensation Act must be liberally construed in favor of the working man, but it is plain that the Legislature intended that the amendment should be partly, at least, for the relief of the attorney appearing for the petitioner, and by using the words "at a reasonable time," the Legislature undoubtedly had in mind the usual construction of this phrase as applied to the person affected by the offer, tender or payment.

██ The purpose of the amendment is to avoid having an attorney make unnecessary preparation and give unnecessary attention to a workman's case when the respondent, by making an offer, tender or payment, can avoid such waste of time. This requires that the offer, tender or payment must be made at such a time prior to the hearing that the attorney will have a reasonable opportunity to learn about it; otherwise, the attorneys who practice in the Compensation Bureau would be back where they were before the amendment was enacted.

From a careful study of the record I find that the respondent paid temporary disability up to and including July 8, 1954, and on Thursday preceding the hearing of Monday, July 19, 1954, Mr. Diehl, the employment manager, approached him in the absence of the attorneys and handed him a check for $12.86, and said it was the last of his temporary. There was nothing on the check to indicate its purpose.

Mr. Diehl also handed him another check and said it was the beginning of 80% of permanent disability, and this was the first check for $30. The check is dated July 15, 1954 and states, "Compensation for week. First week of 440 weeks of permanent compensation." When petitioner was handed these checks he said nothing, but on Friday he discussed the matter with his attorney over the telephone. He did not

cash the checks, but brought them to court on Monday and they were received in evidence. It was admitted that the check for $12.86 carried petitioner's temporary up to July 8, 1954.

On the medical side, Dr. Cardinale testified for the petitioner and said he was totally disabled permanently 100%, which consisted of orthopedic disability, complicated by a neurosis. Dr. Keats, for respondent, did not contradict the overall testimony of Dr. Cardinale of 100% disability, but Dr. Keats stated that he, Dr. Keats, was not competent to testify as to the neurosis. By consent, the report of Dr. Boehm that the man was totally disabled was offered in evidence. The attorneys also stipulated that if Dr. Blumberg were present, he would testify, from a neurological standpoint, that petitioner is 100% disabled. There was no other medical testimony.

■ The Deputy Commissioner found that the checks were accepted by the petitioner, but this is not the test as between the respondent and petitioner's attorney, and even so, the acceptance, if any, was conditional upon petitioner receiving advice from his attorney, which of course the petitioner had the right to ask and the attorney had a duty to give after he had reasonable opportunity to find out the facts. The Legislature did not intend that the relationship of the attorney and client should cease if a working man were handed a check in the absence of his attorney, nor even if he accepted it.

[5] The second point urged is that respondent could not offer a permanent settlement while petitioner was being paid temporary. The amended statute does not say anything like this and it should be given a practical construction so as to effect its purposes with fairness to both attorney and respondent.

In any event, respondent stopped temporary as of July 8, 1954, and the hearing was held July 19, 1954, so that 11 days intervened. Furthermore, on July 12, 1954, seven days before the hearing, the amended answer of respondent was filed and paragraph 12 therefore states, "Permanent dis-

ability 80 per cent, 440 weeks, $13,200.00." This amended answer was sworn to by Mr. Diehl on July 9, 1954, which was six days before Mr. Diehl approached petitioner with the checks on July 15, but it was not until July 19, or at least until Friday, July 16, that petitioner's attorney had any notice of respondent's intentions, and the Friday notice was not sufficiently explicit to enable him to know what to do about the hearing because what petitioner told his lawyer over the telephone does not appear. Furthermore, Friday is practically the end of the business week and Saturday and Sunday intervened between Friday and Monday morning. There is no evidence that the amended answer was brought to the attention of the petitioner or his attorney at any time before the hearing.

One of the prime objects of our new court system is to avoid waste of time so that attorneys will be able to attend to their court engagements with reasonable promptness and thus contribute to the increased efficiency of our modern courts by avoiding breakdowns in calendars and unnecessary postponements and delay, and a practical and reasonable construction of the statute must take note of the value of time to a practising lawyer as well as to litigants. He should apportion his time reasonably in advance in order to keep his court engagements promptly and thus contribute to the increased tempo and efficiency of our modern court system of which he is a vital part.

It is reasonable to hold that where an attorney is to be deprived of a fee in the compensation court, no matter how diligently he may have served his client, the respondent should be required to make his offer, tender or payment within a time which will reasonably permit the offer, tender or payment to come to the attention of the attorney before the date set for hearing, so that he may have a reasonable time to know what is going on and what to do and how to plan his work in view of the altered status created by the offer, tender or payment. Here the amended answer was not brought to the attention of the petitioner or his attorney, and the checks

came to the attention of the attorney by indirection and without his seeing them, and practically at the last minute, so far as preparing the case for the trial was concerned. It is true that the Compensation Act is primarily for the workman, but the amendment was passed to correct a situation where a conscientious lawyer could be deprived of both his time and his fee without reasonable notice.

 I find that the acts of the respondent in respect to permanent and temporary disability did not legally deprive petitioner's attorney of a reasonable attorney fee based on the award made by the bureau.

Under the circumstances, I fix $900 as a reasonable counsel fee for work done in the bureau to be paid by respondent.

The rules provide for a reasonable counsel fee to the party prevailing on appeal, and the petitioner's attorney is a party for the purpose of this appeal.

A fee of $100 is awarded to petitioner's attorney on appeal to be paid by respondent and respondent is also to pay stenographer's fees.